UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JORGE RODRIGUEZ | Civil Action No: |
| Plaintiff, | |
| -against- | COMPLAINT and DEMAND FOR A TRIAL BY JURY |
| IRIS COTTO, JGV MANAGEMENT CORP. JAY & M CORP., JOSUE VELAZQUEZ, AND MOTT HAVEN 140 LLC, | |
| Defendants. | |

## NATURE OF THE ACTION

1. Plaintiff Jorge Rodriguez brings this action against his former employers, Defendants Iris Cotto, JGV Management Corp., Jay & M Corp., Josue Velazquez, and Mott Haven 140 LLC, to recover unpaid wages and remedy unlawful retaliation. Mr. Rodriguez files suit under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et. seq., New York Labor Law ("NYLL") §§ 190 et. seq and §§ 650 et. seq, and the Minimum Wage Order for the Building Service Industry ("Building Service Industry Wage Order"), 12 N.Y.C.R.R. §141-2.2.

2. Defendants together own and operate residential apartment buildings in New York City, including a set of seven apartment buildings on East 140th Street in the Bronx, numbers 445, 451, 455, 461, 465, 471, and 481. (together, the "East 140th Street Properties"). These properties contain approximately 110 apartment units. Defendants employed Mr. Rodriguez as a residential building superintendent from June 2020 through March 28, 2022. As superintendent, Mr. Rodriguez regularly worked significant overtime hours for Defendants to maintain the East 140th Street properties. Though Defendants knew of Mr. Rodriguez's working

1

hours, they refused to pay him any overtime, in violation of the FLSA and NYLL. When Mr. Rodriguez complained of Defendants' failure to pay overtime in a conversation with Ms. Cotto, on or around March 28, 2022, Defendants terminated him in retaliation. Throughout their dealings with Mr. Rodriguez, Defendants acted with willful and reckless disregard for their obligations under the FLSA and NYLL.

3. Mr. Rodriguez seeks unpaid overtime wages, unpaid straight time wages, liquidated damages, statutory damages, back pay, compensatory damages, interest, and attorneys' fees for Defendants violations of the FLSA, the NYLL, and Building Service Industry Wage Order.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b). The Court has jurisdiction over Mr. Rodriguez's state law claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391, because a substantial part of the events giving rise to Mr. Rodriguez's claims occurred in this judicial district.

## PARTIES

6. Plaintiff Jorge Rodriguez currently resides at 461 E. 140th Street, Apartment 5B, Bronx, New York 10454.

7. Upon information and belief, Defendant Iris Cotto is a member of Defendants Jay & M Corp., JGV Management Corp., and Mott Haven 140 LLC. Defendant Cotto is additionally the Director of Human Resources for Defendant Jay & M Corp. She maintains a principal place of business at 1357 Southern Boulevard, Store 1A, Bronx, NY, 10459.

8.  Defendant Jay & M Corp. ("Jay & M") is in the business of managing residential real property. Jay & M is a domestic corporation registered with the New York State Department of State. Jay & M maintains a principal place of business at 1357 Southern Boulevard, Store 1A, Bronx, NY, United States, 10459

9.  Defendant JGV Management Corp. ("JGV") is the managing agent of Defendants East 140th Street properties. JGV is a domestic corporation registered with the New York Department of State. JGV maintains a principal place of business at 1357 Southern Boulevard, Store 1A, Bronx, NY, United States, 10459

10. Defendant Josue Velazquez, upon information and belief, is a member of Jay & M, JGV, and Mott Haven 140 LLC. Defendant Velazquez supervised Mr. Rodriguez throughout his employment. Defendant maintains a principal place of business at 1357 Southern Boulevard, Store 1A, Bronx, NY, United States, 10459

11. Defendant Mott Haven 140 LLC ("Mott Haven 140") holds title to the 140th Street properties in which Defendants employed Mr. Rodriguez. Mott Haven 140 is a domestic limited liability company registered with the New York State Department of State. Mott Haven 140 maintains a principal place of business at 1325 Southern Boulevard, Suite 2, Bronx, NY, United States, 10459

12. Defendants constitute a single employer of Mr. Rodriguez within the meaning of the FLSA and NYLL.

13. In the alternative, Defendants jointly employed Mr. Rodriguez within the meaning of the FLSA and NYLL.

14. Defendants jointly and individually collect over $500,000 in annual revenue.

15. Defendants retain employees who regularly handle goods produced for or moved in interstate commerce, including construction materials, appliances, and utility resources such as heating oil and electricity.

## FACTS

### Mr. Rodriguez's Hiring and Superintendent Duties

16. Defendants, through Mr. Velazquez, hired Mr. Rodriguez in or around June 2020 to work as a building superintendent at Defendants' East 140th Street properties.

17. Defendants promised Mr. Rodriguez a wage of $15 per hour.

18. Defendants initially promised Mr. Rodriguez an apartment at 461 E. 140th Street, including rent and utilities. There was an apartment at 461 E. 140th Street designated for the superintendent, which was still occupied by the previous superintendent when Mr. Rodriguez began working for Defendants.

19. Mr. Rodriguez and his wife, Ms. Jennifer Andino, moved into a different apartment at 461 E. 140th Street, and Defendants executed a lease with Ms. Andino granting her possession of the apartment. The New York City Human Resources Administration provided Defendants with Public Assistance payments to cover Mr. Rodriguez and Ms. Andino's rent.

20. Defendants did not provide Mr. Rodriguez with a written employment contract or a wage notice as required by the NYLL.

21. Mr. Velasquez informed Mr. Rodriguez that Defendants expected him to work at the least from Monday to Friday, starting from 8:00 AM to 5:00 PM, with a one-hour break for lunch.

22. As building superintendent, Mr. Rodriguez was responsible for the maintenance of the East 140th Street properties. His duties included a wide variety of maintenance work in the

4

building common areas and individual apartments to ensure safety and habitability, including resolving basic plumbing and electrical problems in apartments, and repairing damage to physical building infrastructure such as walls, doors, and windows.

23. Mr. Rodriguez was also responsible for cleaning of the building and ensuring proper removal of garbage and recycling.

24. Defendants initially employed individuals to work as porters, whose primary duties were to attend to the cleaning of the building and garbage removal. However, Defendants expected Plaintiff to regularly assist the porters with these tasks.

25. Defendants did not retain porters consistently throughout their employment of Mr. Rodriguez. For most of his time working for Defendants, he had to care for his assigned buildings with little or no assistance.

### Mr. Rodriguez's Work Hours

26. Mr. Rodriguez routinely worked more than forty hours per week for Defendants.

27. To accomplish the duties placed upon him by Defendants, Mr. Rodriguez started his workday at 7:30 A.M and worked until at least 5:00 P.M.

28. Mr. Rodriguez initially worked Monday through Friday, though Defendants also required him to work on certain weekends.

29. Mr. Rodriguez worked additional hours on days before trash and recycling pick-ups.

30. The New York City Department of Sanitation removes trash and recycling from the curb outside Defendants' properties on 140th Street on Mondays, Wednesdays, and Fridays.

31. To prepare for the pickup, Mr. Rodriguez worked approximately two and a half additional hours on Sundays, Tuesdays, and Thursdays. On these days, Mr. Rodriguez generally worked from 5:00 P.M. until around 7:30 P.M.

32. In addition to taking out building trash and recycling, Mr. Rodriguez worked further, irregular hours outside the schedule first described by Defendants. This work included urgent requests for services for Defendants, assisting tenants who could not provide access to their apartments during normal working hours, and other such tasks.

33. In or around October 2021, Defendants changed Mr. Rodriguez's work week from Monday to Friday to Sunday to Thursday, with Friday and Saturday as purported off days.

34. The change in Mr. Rodriguez's stated work schedule did not have a material effect on his hours worked each week.

35. Mr. Rodriguez generally worked at least 50 hours each week for Defendants throughout his employment.

**Defendants Willfully Failed to Pay Mr. Rodriguez Overtime Compensation**

36. Defendants had ample reason to know of Mr. Rodriguez's overtime hours.

37. Defendant Velazquez and Defendant Cotto resided at 461 E. 140th Street during Mr. Rodriguez's employment.

38. Defendants often saw Mr. Rodriguez working outside of his regularly scheduled hours at 461 E. 140th Street or Defendants' adjoining properties.

39. Defendant Velazquez personally supervised Mr. Rodriguez's evening removal of garbage and recycling from Defendants' East 140th Street properties on multiple occasions.

40. Defendant Velazquez additionally gave Mr. Rodriguez assignments to be completed outside of his regular hours of 8:00 A.M. to 5:00 P.M., such as time sensitive service requests which required immediate attention, regardless of the hour.

41. Defendants maintained a policy requiring Mr. Rodriguez and other employees to underreport their work hours.

42. At the outset of Mr. Rodriguez's employment, Defendants used a timesheet system which required him to hand-record his hours for each work week.

43. Mr. Rodriguez had never used such a system, so he called Defendants' office to inquire as to its use. Mr. Rodriguez spoke with a secretarial employee, who he knew only as Gloria. Gloria told Mr. Rodriguez that it was Defendants' policy that he should not report more than thirty-five hours of work each week, regardless of how many hours he worked.

44. In or around December 2020, Mr. Rodriguez attended a meeting at Defendants' Southern Boulevard office along with employees working as superintendents at Defendants' other properties.

45. At the meeting, other superintendents complained to Defendant Cotto about Defendants' compensation practices, including their failure to pay overtime compensation and failure to pay straight time wages for all hours worked.

46. Defendant Cotto stated to the superintendents present, including Mr. Rodriguez, that it was Defendants' policy to pay for only thirty-five hours of work each week, regardless of how many hours were worked.

**Wages Owed to Mr. Rodriguez**

47. Defendants paid Mr. Rodriguez a cash wage of $15 per hour. Mr. Rodriguez's overtime rate is thus $22.50 per hour.

48. Mr. Rodriguez worked for Defendants an average of at least 50 hours each week.

49. Mr. Rodriguez worked for Defendants for approximately 93 work weeks between June 8, 2020, and March 28, 2022.

50. Defendants owe Mr. Rodriguez at least $20,829 in unpaid overtime wages.

51. Defendants further paid Mr. Rodriguez for only thirty-five hours of straight time work each week, withholding $75 owed for the remaining five hours.

52. Defendants accordingly owe Mr. Rodriguez not less than $6,942 in unpaid straight time wages.

53. Altogether, Defendants owe Mr. Rodriguez $27,771 in unpaid overtime and straight time wages, not including liquidated damages, penalties, or pre-judgment interest.

**Defendants Fired Mr. Rodriguez Because He Opposed Their Refusal to Pay Overtime**

54. Completion of all Mr. Rodriguez's assignments required him to work a substantial amount of overtime.

55. Removal of the E. 140th Street Properties' trash and recycling was a particularly time-consuming task for Mr. Rodriguez, which often required him to work late into the evening.

56. To complete the removal of trash and recycling, Mr. Rodriguez had to gather bags of refuse from containers located in separate fenced areas adjacent to each of the seven buildings, and then carry the bags to the curb. Mr. Rodriguez additionally had to make sure trash and recycling were sorted into the appropriate receptacles and clean the storage areas after removing trash and recycling.

57. On or around March 27, 2022, Mr. Rodriguez worked until around 9:00 P.M taking out the East 140th Street Properties' building trash. On this occasion, Mr. Rodriguez took

most of the trash from the E. 140th Street Properties from the designated receptacles to the curbs outside each building.

58. Because of the late hour, Mr. Rodriguez left some of the trash in the storage area, planning to finish the removal early the next day.

59. Mr. Rodriguez in fact returned early the next morning, March 28, and finished taking the trash to the curb.

60. Later that same day, Ms. Cotto asked Mr. Rodriguez to meet her at Defendants' Southern Boulevard office.

61. Ms. Cotto reprimanded Mr. Rodriguez for leaving some of the trash for removal that morning.

62. Mr. Rodriguez responded by protesting Defendants' failure to pay overtime. Mr. Rodriguez explained that he regularly worked over forty hours without overtime pay, and that completion of all his assigned duties required him to work overtime. Mr. Rodriguez further stated that completing the trash removal the previous evening would have required him to well past his regular schedule without expectation of overtime pay.

63. Rather than take remedial action regarding Defendants' failure to pay overtime, Ms. Cotto responded to Mr. Rodriguez with words to the effect that it was the company's problem rather than his, because Defendants were terminating him, effective immediately.

64. Defendants in fact terminated Mr. Rodriguez on or around March 28, 2022.

65. Defendants terminated Mr. Rodriguez at least in part because he protested their failure to provide overtime compensation as required by the FLSA and NYLL.

66. Defendants conduct caused Mr. Rodriguez substantial emotional distress. Mr. Rodriguez felt used by Defendants, who took advantage of his hard work but treated him without

9

respect. Mr. Rodriguez's termination additionally caused him stress by placing him in a financially precarious situation. Without the income from his job for Defendants, Mr. Rodriguez and his wife have little income to support themselves. Though Mr. Rodriguez has diligently sought work, he has yet to find suitable new employment.

67. Defendants additionally contributed to Mr. Rodriguez's feelings of stress and anxiety resulting from his termination by seeking to evict him and his family from their apartment at 461 E. 140th Street. On or around June 8, 2022, Defendants filed an action in the Civil Court of the City of New York, Bronx County, claiming possession of Mr. Rodriguez's apartment and $23,329.80 in unpaid rent. Mr. Rodriguez fears becoming homeless as a result of the suit, contributing to emotional distress caused by Defendants' wrongful termination.

## FIRST CLAIM FOR RELIEF

### Unpaid Overtime in Violation of the Fair Labor Standards Act

68. Plaintiff realleges and incorporates by reference every allegation in all preceding paragraphs.

69. Upon information and belief, at all relevant times, Defendants were and continue to be employers engaged in commerce within the meaning of the FLSA. 29 U.S.C. § 203(s)(1)(A)(ii).

70. Upon information and belief, at all relevant times, Defendants have had gross revenues in excess of $500,000 per year and retain employees who produce or handle goods moved in interstate commerce.

71. Plaintiff is a covered individual within the meaning of the FLSA. 29 U.S.C. § 207(a).

72. Until his termination on or around March 28, 2022, Defendants employed Plaintiff within the meaning of the FLSA at all relevant times. 29 U.S.C. § 203.

73. Defendant failed to pay Plaintiff one-and-one-half times his regular wage for all hours worked over forty in one week, in violation of the FLSA. 29 U.S.C. § 207(a)(1).

74. Defendants' violation of the FLSA was willful and intentional. Defendants failed to make a good faith effort to comply with the FLSA with respect to Plaintiff's compensation, when they knew or should have known such an effort was due and that their failure would financially injure Plaintiff.

75. Plaintiff is entitled to recover from Defendants, jointly and severally, amounts to be determined at trial for his unpaid overtime, and equal amount as liquidated damages, reasonable attorney's fees and the costs of the action, pursuant to 29 U.S.C. § 216(b).

## SECOND CLAIM FOR RELIEF

**Unpaid Overtime in Violation of the New York Labor Law**

76. Plaintiff realleges and incorporates by reference every allegation in all preceding paragraphs.

77. Defendants are employers within the meaning of the NYLL.

78. As the owners and operators of a residential building, Defendants are covered by the Building Services Wage Order. *See* 12 N.Y.C.R.R. §141-3.1

79. Defendants employed Plaintiff within the meaning of the NYLL.

80. At all relevant times to this action, Defendants failed to pay Plaintiff one-and-one-half times his regular hourly rate for all hours worked in excess of forty per work week, in violation of the NYLL and Building Services Wage Order.

81. Defendants' failure to pay wages and overtime compensation to Plaintiff for work performed after the first 40 hours worked in a week was willful.

82. Plaintiff is entitled to recover unpaid overtime, an additional amount in liquidated damages equal to unpaid wages and overtime, costs, reasonable attorneys' fees, and pre-as well as post-judgment interest. New York Labor Law §198(1-a), 663(1).

### THIRD CLAIM FOR RELIEF

**Unpaid Wages in Violation of the New York Labor Law**

83. Plaintiff realleges and incorporates by reference every allegation in all preceding paragraphs.

84. Defendants are employers within the meaning of the NYLL *See* § 190(3)

85. Defendants employed Plaintiff within the meaning of the NYLL. *See* § 190(1)

86. Defendants failed to pay Plaintiff at least his regular hourly rate for all hours worked under forty, in violation of New York Labor Law §§ 191 and 193.

87. Plaintiff is entitled to recover unpaid wages, an additional amount in liquidated damages equal to his unpaid wages, costs, reasonable attorney's fees, and pre-as well as post-judgment interest. *See* NYLL §198(1-a).

### FOURTH CLAIM FOR RELIEF

**Failure to Provide Notice and Statements Required by NYLL**

88. Plaintiff realleges and incorporates by reference every allegation in all preceding paragraphs.

89. Defendants willfully failed to provide Plaintiff with a written notice of his wage rate and overtime eligibility, as required by NYLL § 195(1).

90. Defendants willfully failed to provide Plaintiff with wage statements reflecting Plaintiff's actual hours worked and overtime rate, as required by NYLL § 195(3).

91. Plaintiff is entitled to $50 for each workday in which Defendants violated NYLL § 195(1), up to a maximum of $5,000. Plaintiff is similarly entitled to $250 for each workday Defendants violated NYLL § 195(3), up to a maximum of $5,000, plus costs, reasonable attorneys' fees, and any other relief that the Court in its discretion deems appropriate.

### FIFTH CLAIM FOR RELIEF

#### Retaliation in Violation of the FLSA

92. Plaintiff realleges and incorporates by reference every allegation in all preceding paragraphs.

93. Plaintiff engaged in activity protected by the FLSA, including but not limited to protesting Defendants' failure to pay overtime and requirement that Plaintiff work unpaid overtime.

94. Defendants took an adverse employment action against Plaintiff by terminating him.

95. Defendants took the adverse employment action at least in part because of Plaintiff's protected activity, as demonstrated by the timing of Plaintiff's termination and Ms. Cotto's comments to Plaintiff.

96. Plaintiff suffered injury because of his termination, including lost wages and emotional distress.

97. For Defendants' violation of 29 U.S.C. 215(a)(3), Plaintiff is entitled to reinstatement, back pay, liquidated damages, compensatory damages, and attorney's fees and costs, pursuant to 29 U.S.C. 216(b).

## SIXTH CLAIM FOR RELIEF

### Retaliation in Violation of the NYLL

98.  Plaintiff realleges and incorporates by reference every allegation in all preceding paragraphs.

99.  Plaintiff engaged in activity protected by the NYLL, including but not limited to protesting Defendants' failure to pay overtime and requirement that Plaintiff work unpaid overtime.

100. Defendants took an adverse employment action against Plaintiff by terminating his employment.

101. Defendants took the adverse employment action at least in part because of Plaintiff's protected activity, as demonstrated by the timing of Plaintiff's termination and Ms. Cotto's comments to Plaintiff.

102. Plaintiff suffered injury because of his termination, including lost wages and emotional distress.

103. For Defendants' violation of NYLL § 215(1)(a), Plaintiff is entitled to reinstatement, back pay, liquidated damages, compensatory damages, and attorney's fees and costs, pursuant to NYLL § 215(2)(a).

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court:

(a) Award Plaintiff damages for unpaid overtime due under the FLSA and an additional equal amount as liquidated damages because of Defendants' willful failure to pay

overtime wages for hours worked beyond forty hours in a single work week, pursuant to 29 U.S.C. § 207(a);

(b) Award Plaintiff damages for unpaid overtime wages and an additional equal amount as liquidated damages, pursuant to New York Labor Law § 663(1);

(c) Award Plaintiff damages for unpaid wages and an additional equal amount as liquidated damages, pursuant to New York Labor Law § 198(a-1);

(d) Award Plaintiff $5,000 for Defendant's failure to provide wage statements in violation of NYLL § 195(3);

(e) Award Plaintiff $5,000 for Defendant's failure to provide a hiring notice in violation of NYLL § 195(1);

(f) Order Plaintiff's reinstatement pursuant to 29 U.S.C. 216(b) and NYLL § 215(2)(a);

(g) Award Plaintiff lost wages, compensatory damages, and liquidated damages pursuant to 29 U.S.C. § 216(b) and NYLL § 215(2)(a);

(h) Award Plaintiff pre- and post-judgment interest;

(i) Award Plaintiff the costs of this action together with reasonable attorney's fees pursuant to NYLL § 663, NYLL § 215(2)(a) and 29 U.S.C. § 216(b)

(j) Grant such other and further relief as this Court deems necessary and proper.

Dated: Bronx, New York
February 16, 2023

Respectfully,

/s/ Michael Diller
BRONX LEGAL SERVICES
Attorneys for Plaintiff
349 E. 149th St., 10th Floor
The Bronx, NY 10451
(347) 592-2117
mdiller@lsnyc.org